# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SECURITIES & EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action Number **2:09-cv-2238-AKK** |
| CHARLES E. LeCROY and DOUGLAS MacFADDIN, | ) ) ) ) | |
| Defendants. | ) ) | |

## <u>MEMORANDUM OPINION</u>

Notwithstanding their alleged role in what one writer describes as "a billion-dollar predatory swap deal worked up at the highest levels of America's biggest banks," and "one of the worst municipal financial disasters in American history"[1] – a disaster that has resulted in the conviction of former Jefferson County commissioner Larry Langford and the guilty pleas of William B. Blount and Albert W. LaPierre, all of whom are now serving time in federal prison and are prominently identified in the complaint in this matter – defendants Douglas MacFaddin ("MacFaddin") and Charles E. LeCroy ("LeCroy") (collectively, "defendants") seek to escape liability at the outset of this lawsuit by arguing in

---

[1] *See* Matt Taibbi, *Looting Main Street: How the nation's biggest banks are ripping off American cities with the same predatory deals that brought down Greece*, ROLLING STONE, Mar. 31, 2010, http://rollingstone.com/politics/story/32906678/looting_main_street.

their respective Motions to Dismiss, (docs. 12, 13), that the SEC has no regulatory oversight over the swap deals in question because they are purportedly not "security-based swap agreements."  Defendants  ask this court to take judicial notice of this disputed fact based on their claim and that of an *amicus* trade group (the Securities Industry and Financial Markets Association ("SIFMA") that the SIFMA index, which sets the rate of the swap agreements, is an interest rate index, rather than an index of securities.  Obviously, LeCroy and MacFaddin ignore that courts can only take judicial notice of established undisputed facts.  They ignore also that Eleventh Circuit case law states unequivocally that courts should reject attacks on the merits that are couched as subject matter jurisdiction challenges at this early stage in litigation, especially when, as here, the arguments are contingent on a disputed fact.

To prevail, the SEC will ultimately have to prove that the swap agreements here are "security-based" and, if so, that these defendants violated the anti-fraud provision of the securities laws.  This is a question, however, that this court cannot resolve at this early stage on a motion to dismiss.  Accordingly, for the reasons stated below, both motions to dismiss are DENIED.

# I.  BACKGROUND

Plaintiff Securities & Exchange Commission ("SEC") commenced this action on November 4, 2009.  Doc. 1.  The complaint alleges that defendants violated Section 17(a) of the Securities Act of 1933; sections 10(b) and 15B(c)(1) and Rule 10b-5 of the Securities Exchange Act of 1934; and Municipal Securities Rulemaking Board Rules G-17 and G-20.  *Id.* ¶¶ 7, 94-116.  The SEC seeks a declaratory judgment, a permanent injunction, and disgorgement of all profits and proceeds resulting from defendants' fraud.  *Id.* at 38-39.

This dispute arises from a series of financial transactions between defendants' former employer, J.P. Morgan Securities, Inc./JPMorgan Chase Bank, N.A. ("J.P. Morgan"), and Jefferson County, Alabama.  *Id.* at ¶¶ 1, 3.  The complaint alleges that LeCroy and MacFaddin, each in their capacity as managing directors for J.P. Morgan, arranged to pay $8.2 million to the friends and associates of some members of the Jefferson County Commission to secure the county's bond underwriting and interest rate swap agreement business.  *Id.* ¶¶ 1-3, 8-9.  The complaint alleges that this operated as a "fraud and deceit on the County and investors by depriving them of an objective and impartial bond underwriting process and swap agreement negotiations."  *Id.* ¶ 7.

Defendants each filed Motions to Dismiss as their initial responsive

pleading.  Docs. 12, 13.

## II.  APPLICABLE STANDARDS

### A.    Subject Matter Jurisdiction

"Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two

forms, 'facial' and 'factual' attacks."  *Morrison v. Amway Corp.*, 323 F.3d 920,

924 n.5 (11th Cir. 2003) (citation omitted).  Facial attacks are based on the

allegations in the complaint, which the court must take as true in deciding whether

to grant the motion.  *Id.*  Factual attacks challenge subject matter jurisdiction "in

fact, irrespective of the pleadings," and the court "may consider extrinsic

evidence" in ruling on a factual challenge.  *Id.*   In such a case, "the trial court is

free to weigh the evidence and satisfy itself as to the existence of its power to hear

the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations,

and the existence of disputed material facts will not preclude the trial court from

evaluating for itself the merits of the jurisdictional issue."  *Id.* at 925 (citation

omitted).  However, a court may only find that it lacks subject matter jurisdiction

"if the facts necessary to sustain jurisdiction *do not implicate the merits of*

*plaintiff's cause of action*." *Id.* (citations omitted) (emphasis in original).  When a

jurisdictional challenge implicates the merits of plaintiff's claim, the court must

"find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Id.* (citations omitted).  This ensures "a greater level of protection for the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place great restrictions on the district court's discretion." *Id.* (citations omitted) (alterations in original).

### B.    Failure to State a Claim

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Iqbal*, 129 S. Ct. at 1949 (internal quotations and citations omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 1949 (citing *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for specified causes of cause:  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and citations omitted).  A complaint states a facially plausible claim "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

On a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations as true.  *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228,

1231 (11th Cir. 2000).  However, legal conclusions unsupported by factual

allegations are not entitled to that assumption.  *Iqbal*, 129 S. Ct. at 1950.

Finally, "[a] rule 12(b)(6) dismissal on statute of limitations grounds is

appropriate only if it is apparent from the face of the complaint that the claim is

time-barred."  *Bhd. of Locomotive Eng'rs. & Trainmen Gen. Comm. of Adjustment*

*CSX Transp. N. Lines v. CSX Transp. Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008)

(quoting *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir.

2005) (citations omitted)).

### III.  ANALYSIS

### A.    Defendants' subject matter jurisdiction challenge fails.

Defendants assert that the swap agreements in question are not based on

"securities," because the index that sets their rates, the SIFMA Municipal Swap

Index, is an index of rates, rather than an index of securities.  Doc. 12 at 25; doc.

13 at 16.  Consequently, defendants contend that Counts I-III, as they relate to the

swap agreements, fail on subject matter jurisdiction grounds since the SEC only

has enforcement authority over securities.  Doc. 12 at 20; doc. 13 at 14.  Because

defendants rely on a disputed fact, their subject matter jurisdiction challenge fails.

1.      *Defendants' motion to dismiss raises a factual challenge to this court's jurisdiction based on a disputed fact.*

Although defendants profess to make a facial challenge to this court's jurisdiction,[2] they ask this court nonetheless to engage in a factual challenge analysis, *i.e.*, to consider extrinsic evidence and to reject the SEC's contentions that the swap agreements are securities.  Specifically, defendants point to an *amicus curiae* brief SIFMA filed in another case pending in this court[3] that describes the nature of the Municipal Swap Index, and SIFMA's reply to its motion for leave to file *amicus curiae*.[4]  Defendants want this court to take judicial notice of the "facts" contained in these documents – specifically, that the Municipal Swap Index is not an index of securities.  Doc. 13 at 17.[5]

---

[2] A facial attack challenges subject matter jurisdiction based on the allegations of the complaint, and thus accepts the allegations as true for purposes of the motion.  *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citation omitted).

[3] *See SEC v. Langford, et. al*, Civil Action No. 2:08-cv-761-AKK, Doc. 25.

[4] *See SEC v. Langford, et. al*, Civil Action No. 2:08-cv-761-AKK, Doc. 35.

[5] Defendant MacFaddin appears to point to the SIFMA web site and other SIFMA publications to support his contention that the Municipal Swap Index is not an index of securities.  Doc. 12 at 25-26.  At any rate, both defendants rely on submissions or publications by SIFMA to make their argument.  Because they ask this court to not accept the allegations of the complaint as true and to consider extrinsic evidence, defendants' challenge is, in fact, a factual, rather than a facial attack. As stated previously, a "factual attack [] challenge[s] subject matter jurisdiction in fact, irrespective of the pleadings . . . [and] [i]n resolving a factual attack, the district court may consider extrinsic evidence . . . ."  *Morrison*, 323 F.3d at 924 n.5 (citation omitted).  In a factual challenge, "no presumptive truthfulness attaches to plaintiff's allegations, and . . . disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue."  *Id.* at 925.

A court can only take judicial notice of adjudicative facts under Rule 201(b) of the Federal Rules of Evidence when the fact is "not subject to reasonable dispute" because it is either "generally known within the territorial jurisdiction of the trial court or . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b). However, to take judicial notice, a fact must be indisputable, and one that "only an unreasonable person would insist on disputing," "since the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence, and in effect, directing a verdict against him as to the fact noticed . . . ."  *U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citation omitted).  Here, because the SEC disputes defendants' contention that the Municipal Swap Index is not securities-based and offers evidence that challenges defendants' and SIFMA's contentions, this court can not take judicial notice of this disputed fact as defendants suggest.[6]

> 2. *Defendants' subject matter jurisdiction challenge implicates the merits of the SEC's claim.*

Defendants' jurisdictional challenge, whether facial or factual, fails because it implicates the merits of the SEC's claim.  A court may only examine

_____

[6] Although a factual dispute does not preclude the court from evaluating the merits of defendants' jurisdictional challenge, the exception is when, as here, the challenge implicates the merits.  *See Morrison*, 323 F.3d at 925.

jurisdictional challenges pursuant to Rule 12(b)(1)[7] "if the facts necessary to

sustain jurisdiction *do not implicate the merits of plaintiff's cause of action.*"

*Morrison*, 323 F.3d at 925 (citation omitted) (emphasis in original).  If a challenge

implicates the merits of a plaintiff's claim, then "the proper course of action for

the district court . . . is to find that jurisdiction exists and deal with the objection as

a direct attack on the merits of the plaintiff's case."  *Id.* (citation omitted).  A

jurisdictional challenge implicates the merits when "a statute provides the basis for

both the subject matter jurisdiction of the federal court and the plaintiff's

substantive claim for relief."  *Id.* at 926 (quoting *Garcia v. Copenhaver, Bell, &*

*Assoc., M.D.'s, P.A.*, 104 F.3d 1256, 1262 (11th Cir. 1997)).  As it relates to

securities, the Fifth Circuit has "specifically held that the definition of the term

'security' in the context of a suit based on the federal securities laws may reach the

merits of the case and thereby limit the court's discretion to dismiss for lack of

subject matter jurisdiction."  *Williamson v. Tucker*, 645 F.2d 404, 416 (5th Cir.

1981).[8]  As the court found, "it is clear that the jurisdictional issue reaches the

merits of the plaintiffs' case; if the joint venture interests and notes are not

---

[7] Defendants challenge the court's subject matter jurisdiction over Counts I-III pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Doc. 12 at 18; Doc. 13 at 14.

[8] *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting all decisions of the former Fifth Circuit announced prior to October 1, 1981, as binding precedent in the Eleventh Circuit).

securities, there is not only no federal jurisdiction to hear the case but also no federal cause of action on the stated facts."  *Id.*

This is precisely the case here.  Defendants' arguments rest on their contention that the SEC lacks the authority to prosecute them under the anti-fraud statutes because the swap agreements referenced in Counts I-III are not securities. Doc. 12 at 20; doc. 13 at 14.  This argument reaches the merits of the SEC's case because, after all, "if the . . . [swap agreements] are not securities, there is not only no federal jurisdiction to hear the case but also no federal cause of action on the stated facts." *Williamson*, 645 F.2d at 416.  Therefore, this issue is inappropriate for determination under a Rule 12(b)(1) jurisdictional challenge and more appropriate for a Rule 12(b)(6) or Rule 56 challenge, "both of which place great restrictions on the district court's jurisdiction." *Morrison*, 323 F.3d at 925.  One of those restrictions, of course, is the requirement that the court view factual disputes in the light most favorable to the non-movant.  Accordingly, defendants' Rule 12(b)(1) challenge fails.

### B.    Defendants' Rule 12(b)(6) challenges fail.

*1. The complaint meets Rule 8(a)'s requirements.*

While defendants do not specifically state as a ground for dismissal that the SEC's complaint fails to meet the notice pleading standard required by Rule 8(a),

both argue that a complaint must allege more than the "bare elements" of a claim to survive a Rule 12(b)(6) motion to dismiss and cite to *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* to support their assertion.   Doc. 12 at 47; doc. 13 at 25-26.   However, Rule 8(a) still requires that a complaint merely state "a short and plain statement of the claim showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)(2)), and *Twombly* only notes that Rule 8(a) requires "more than labels and conclusions, and a formulaic recitation of the elements," and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555.   Similarly, *Iqbal* states that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 129 S. Ct. at 1949.   As discussed below with respect to each of defendants' individual challenges, the SEC's complaint meets the pleading requirements necessary to survive a Rule 12(b)(6) motion to dismiss.

2.    *The complaint satisfies Rule 9(b)'s particularity requirement.*

Defendants argue that Counts I-IV of the complaint fail to comply with Rule 9(b)'s particularity requirement.   However, Rule 9(b) does not abrogate the broad notice pleading requirements of Rule 8(a).  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).   Moreover, a complaint

pleads fraud with the requisite specificity if it alleges the "details of defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 568 (11th Cir. 1994); *see also Chilton Water Auth. v. Shell Oil Co.*, 1999 WL 1628000, at *4 (M.D. Ala. May 21, 1999) (as long as a fraud claim provides "a modest degree of precision and substantiation," the complaint need not state the date, time, or place of the alleged conduct).

The complaint's forty pages fully describe who committed the alleged fraud (MacFaddin and LeCroy), when the acts occurred (during the negotiation and conduct of financial transactions between J.P. Morgan and  Jefferson County in 2002 and 2003), and provides significant detail regarding defendants' allegedly fraudulent acts.  *See* Doc. 1 at 1-3, 8-32.  Accordingly, the complaint satisfies Rule 9(b).

Additionally, defendants argue that the complaint violates Rule 9(b) also by failing to attribute the allegations of fraudulent omission to them individually.[9]

---

[9] Defendants' omission argument applies only to the SEC's allegation that defendants committed fraud in violation of Sections 17(a)(2) and (3) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act, as these are the only counts which allege that defendants fraudulently omitted material facts.  Doc. 1 at 33-35.

Doc. 12 at 48; doc. 13 at 29.  However, defendants overlook that Rule 10b-5[10]

makes it unlawful for a person: "(a) to employ any device, scheme or artifice to

defraud, (b) to make any untrue statement of a material fact or to omit to state a

material fact necessary in order to make the statements made, in the light of the

circumstances under which they were made, not misleading, *or* (c) to engage in

any act, practice, or course of business which operates or would operate as a fraud

or deceit upon any person, in connection with the purchase or sale of any

security."  17 C.F.R. § 240.10b-5 (emphasis added).  Likewise, Sections 17(a)(2)

and (3) make it unlawful for a person "to obtain money or property by means of an

untrue statement of a material fact *or* any omission to state a material fact . . . *or* to

engage in any transaction, practice, or course of business which operates or would

operate as a fraud or deceit upon the purchaser ."  15 U.S.C. § 77q(a)(2), (3)

(emphasis added).  In other words, Sections 17(a)(2) and (3) and Rule 10b-5 set

forth multiple possible ways to establish liability, only one of which is by

omission.  The complaint here alleges specific deceptive acts sufficient to satisfy

---

[10] Congress enacted Rule 10b-5 to enforce the provisions of Section 10(b) of the Exchange Act, which  makes it unlawful for any person to "use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate to the public interest or for the protection of investors."  15 U.S.C. § 78j(b); *see also* 17 C.F.R. § 240.10b-5.

the pleading requirements for alleging violation of Sections 17(a)(2) and (3) of the

Securities Act, and Section 10(b) and Rule 10b-5of the Exchange Act.  Among

other things, the complaint alleges that LeCroy sent internal emails suggesting that

J.P. Morgan pay small local brokers with relationships to Jefferson County

commissioners in order to secure the county's business, and that LeCroy and

MacFaddin discussed in tape recorded telephone conversations the payments made

to local brokers who did no work on the swap deals and their concerns about the

discovery of the payments.  Doc. 1, ¶¶ 29-30, 35-36, 41-42; *see also* doc. 1, ¶¶ 27-

28, 31-32, 43-44, 48-50, 52-53, 57-58, 60, 63-71, 79, 82-84, 88-89, 92-93.

Finally, defendants contend that the complaint violates Rule 9(b) by failing

to allege scienter as to each defendant.  Doc. 12 at 70-74; doc. 13 at 29-31.   To

establish liability under Section 10b and Rule 10b-5, a plaintiff must prove that a

defendant acted with "a mental state embracing the intent to deceive, manipulate,

or defraud." *S.E.C. v. Ginsburg*, 362 F.3d 1292, 1297 (11th Cir. 2004) (quotations

and citations omitted).[11]  Contrary to defendants' contention, the complaint

contains allegations of specific behavior by both defendants that evidence an

---

[11] Defendants' reliance on *Tellabs, Inc. v. Makor Issues & Rights, Inc.*, 551 U.S. 308, 323 (2007), to demonstrate that a complaint must give rise to a "strong inference" of scienter is misplaced.  The Supreme Court made clear that its holding applied only to private plaintiffs bringing securities fraud claims under the Private Securities Litigation Reform Act.  *Id.* at 313-14.  The SEC is not subject to this heightened pleading standard.  *See Ginsburg*, 362 F.3d at 1297-98.

"intent to deceive, manipulate, or defraud."  For example, the complaint alleges

that LeCroy and MacFaddin discussed how to deceptively word an invoice to

cover the fact that the invoicing broker did no actual work on the deal.  Doc. 1. ¶¶

41-44; *see also* doc. 1 ¶¶ 29, 30-32, 36, 45, 49, 52, 53, 58, 63-65, 67-72, 79-88,

90-93.  Therefore, the scienter argument fails also.

> 3.   *The complaint sufficiently alleges that defendants had a duty to disclose their alleged conduct.*

Defendants argue, for myriad reasons, that no duty to disclose any allegedly

fraudulent conduct existed.  As discussed below, to the extent that the anti-fraud

statutes require a duty to disclose, the complaint meets the standard.

> i.   *The swap agreements*

Defendants first argue that because this court has no subject matter

jurisdiction over the swap agreements, they had no duty to disclose any conduct in

connection with the swaps.  Doc. 12 at 54; doc. 13 at 31.  The court addressed this

argument in section A, *supra*, and rejected defendants' subject-matter jurisdiction

challenge.  Defendants' bootstrap argument fails them here as well.

> ii.   *Actionable nondisclosure*

Defendants argue next that the complaint only alleges fraudulent omission

and does not allege any facts giving rise to a duty to disclose.  Doc. 12 at 54-55;

doc. 13 at 31-32.  First, as discussed in section B.*2*, *supra*, the complaint

sufficiently alleges violation of Sections 17(a)(2) and (3) of the Securities Act,
Section 10(b) and Rule 10b-5 of the Exchange Act, which include liability for the
omission of material facts.

Second, since they contend the SEC cannot regulate swaps, defendants
argue that the only possible disclosure obligation for the swap agreements must
arise from a fiduciary relationship.   Doc. 12 at 57; doc. 13 at 32.  Defendants
assert that no disclosure obligation existed here because the parties to the
agreements disclaimed any fiduciary obligation to each other.  *Id.*  However,
again, defendants' argument assumes that this court will find that the SEC cannot
regulate the agreements at issue here.  For the reasons stated earlier, this court
cannot reach such a finding at this early stage.  Moreover, parties to an agreement
cannot disclaim their obligation under the federal securities laws.  *Hossain v.
Rauscher Pierce Refsnes, Inc.*, 46 F. Supp. 2d 1164, 1168 (D. Kan. 1999) ("A
clearing broker cannot contract away duties . . . which the law requires him to
perform.").  Parties are required instead to comply with the securities laws at all
times.   The complaint here sufficiently alleges that defendants violated the federal
securities laws' anti-fraud provisions when they failed to disclose the kickback
payments.

Third, although defendants concede the SEC has the authority to regulate warrant agreements, they argue that J.P. Morgan, their former employer, disclosed more underwriter fees in connection with the warrant agreements than the law required, and that J.P. Morgan's only had a duty to disclose to its investors, rather than the Jefferson County Commission.  Doc. 13 at 36.  However, whether underwriter fees represent required disclosure in the bond documents is irrelevant. The complaint alleges that the payments described in the complaint violate federal securities laws.  Moreover, the case law supports the position that brokers have an obligation to disclose fraudulent payments, irrespective of the disclosures required in the bond agreements.  *See S.E.C. v. Santos*, 355 F. Supp. 2d 917, 920 (N.D. Ill. 2003)  ("[P]articipants in the securities market are entitled to presume that all of the actors are behaving legally; silence that conceals *illegal activity* . . . is always violative of Rule 10b-5.") (internal quotations omitted) (emphasis in original); *Stephens, Inc.*, 68 S.E.C. Docket 1801, at *7 (Nov. 23, 1998) (brokers' failure to disclose arrangements with and payments to government agents constituted a scheme to defraud the municipal bond issuers); *First Fidelity Sec. Group*, 61 S.E.C. Docket 40, at *6 (Jan. 9, 1996) (underwriter defrauded issuers by paying undisclosed kickbacks to financial advisor for underwriting business). Accordingly, the complaint sufficiently alleges that defendants failed to disclose

their allegedly fraudulent conduct and therefore states a claim with respect to the warrant agreements.

Finally, defendants argue that the complaint fails to allege a material nondisclosure.  Doc. 13 at 36.  However, "materiality . . . is a question of fact that may rarely be resolved at the motion to dismiss stage." *In re Unicapital Corp. Sec. Litig.*, 149 F. Supp. 2d 1353, 1364 (S.D. Fla. 2001) (citation omitted).  It is addressed at this early stage "only if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality is it appropriate for the district court to rule that the allegations are inactionable as a matter of law." *Id.* (quoting *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 317 (3d. Cir. 1997).  Allegedly undisclosed payments by a broker-dealer to parties for doing allegedly little or no work and made to secure the votes of elected officials cannot possibly be so "obviously unimportant," as to preclude materiality.  In short, the issue of materiality is inappropriate for resolution at this early stage.

> ### 4.      *The complaint alleges that defendants' alleged bad acts were in connection with the offer, purchase, or sale of a security.*

Defendants challenge the complaint next on the basis that the SEC failed to allege that defendants' bad acts were in connection with the sale of a security because it does not contend that the fraudulent conduct affected either the county's

decision to enter into the swap agreements or the investors' decisions to buy

bonds.  Doc. 13 at 39.  However, the "in connection with" requirement of the anti-

fraud statutes is interpreted broadly.  *S.E.C. v. Zandford*, 535 U.S. 813, 819 (2002)

("[T]he SEC has consistently adopted a broad reading of the phrase 'in connection

with the sale or purchase of any security,' . . . [and] [t]his interpretation of [the 'in

connection with'] requirement . . . is entitled to deference if it is reasonable.")

(citations omitted).  For example, in *Zandford*, the defendant engaged in a

fraudulent scheme in which he sold securities lawfully, but then misappropriated

the proceeds.  *Id.* at 820.  The Court held that even if the actual sale of the

securities was lawful, the misappropriation met the "in connection with"

requirement.  *Id.*  Similarly, in this case, while the actual transactions may have

been lawful, (once one discounts the payoffs that secured the votes to obtain

County Commission approval), the SEC has sufficiently alleged fraudulent acts by

defendants surrounding and in connection with the transactions to survive a

motion to dismiss.  *See* Doc. 1 ¶¶ 25-93.

> 5. *The injunctive relief claims are not time-barred.*

Finally, LeCroy argues that the complaint's injunctive claims are time-

barred by 28 U.S.C. § 2462.  Doc. 13 at 22-23.  This argument fails because

Eleventh Circuit precedent establishes unequivocally that § 2462's five-year

statute of limitations does not apply to SEC actions enforcing the securities laws:

> In suing to enforce the securities laws, the SEC is vindicating public
> rights and furthering public interests . . . Further, there is no
> indication that Congress intended for a statute of limitations to apply
> to this enforcement action.  Rather . . . the framework of the
> Securities and Exchange Act suggests the opposite . . . Congress
> created a number of private claims [in the Securities and Exchange
> Act], each bound by an express statute of limitations.  At the same
> time, and in the same acts, Congress granted the Commission broad
> power to enforce the substantive provisions of the securities laws but
> refrained from imposing an explicit time limit on Commission
> enforcement actions.  Congress clearly devoted its time and attention
> to limitation issues.  The fact that it did not enact an express statute
> of limitation for lawsuits instituted by the Commission, therefore,
> must be interpreted as deliberate.

*S.E.C. v. Calvo*, 378 F.3d 1211, 1218 (11th Cir. 2004) (internal quotations and

citations omitted); *see also S.E.C. v. Diversified Corp. Consulting Group*, 378

F.3d 1219, 1224 (11th Cir. 2004) (same).  Therefore, this court rejects LeCroy's

statute of limitations argument.[12]

---

[12] LeCroy also submits that the injunctive relief claims against him are due to be dismissed because the SEC may only seek an injunction against a person who is "engaged in or is about to engage in any acts or practices constituting a violation."  *See* 15 U.S.C. § 78u(d)(1).  LeCroy argues that since he is now barred from the financial industry, he cannot, *per se*, violate the securities laws. Doc. 13 at 25.  The court will not find, at this early stage, that LeCroy's ban precludes him from ever violating the securities laws again.  Accordingly, the SEC may proceed with its claims, and LeCroy may raise this issue again at the summary judgment stage.

## IV.  CONCLUSION

For the reasons stated above, defendant's motions to dismiss are DENIED.

Defendants' motion to stay is hereby MOOT.

Done and ordered this 4th day of August, 2010.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE